Good afternoon, Illinois Appellate Court, 1st District. Court is now in session, the 6th Division, the Honorable Justice Mary Mikva presiding, case number 1-8-2545, People v. Kevin Duggar. Good afternoon, counsel. As you probably know, you each will have 20 minutes. I would ask the appellant whether you would like to save any of that time for rebuttal. Yes, Your Honor, if we could save five minutes for rebuttal. Sure. And before we start cutting into your time, let me ask each of you who is going to argue to please state your names for the record and let us know which side you're going to argue for. I assume, Ms. Ross, you are arguing for the appellant. Yes, my name is Emily Ross, and I'm a 7-11 student. I'm supervised by Andrea Lewis, who's on the Zoom, and I'm arguing for the appellant, Kevin Duggar. Assistant State's Attorney, John Walters, representing the people of the state of Illinois. All right. Whenever you're ready, Ms. Ross, you may begin. Kevin Duggar stands convicted of a murder that his identical twin brother, Carl, has confessed under oath to committing. Kevin was convicted based solely on the testimony of two eyewitnesses, one of whom recanted at trial, and there is no physical evidence connecting Kevin to the crime. The witnesses first identified Kevin over a month after the shooting in suggestive identification procedures that featured Kevin, but not Carl, meaning the witnesses never had to differentiate between the identical twins. And now, Carl has come forward and given sworn testimony that he, not Kevin, committed this crime. Importantly, around the time of the shooting, Carl, not Kevin, had the only salient characteristic that any eyewitness gave to the police, a braided beard. This confession shakes the foundation of Kevin's conviction and would likely change the result at retrial, which is the focus of my argument today. The post-conviction court's ruling to the contrary, that the confession should be given no weight and that it is not conclusive enough to probably change the result on retrial, is manifest error. Because when weighing the old and the new evidence together, the opposite conclusion is clearly evident. Ms. Ross, can I ask a question? What do we do with the fact that the trial court specifically said that Carl Duggar, Carl Smith, had no credibility? Certainly, Your Honor, and it is the task of the trial judge to make credibility determinations. But these determinations have to be based in the evidence presented at the hearing. And here, the judge didn't adequately grapple with all of the evidence presented, and in some instances, mischaracterized the evidence presented at the third stage evidentiary hearing here. And so we think that this credibility determination, that this confession should be given no weight whatsoever, was against the manifest weight of the evidence and was erroneous. Moreover, beyond just this erroneous credibility determination, what the post-conviction court failed to do here is weigh the old and the new evidence together when deciding whether or not this confession is conclusive. And that's what the Supreme Court has said is necessary in the Coleman case, and also in the Malstad case, is that the post-conviction judge here had to look at the way that this new confession changes the gloss that the trial evidence has, or in some way changes how reliable that evidence is. And so here, we don't see any meaningful balancing being done by the judge here in his very short two pages of oral remarks denying this petition. The only mention he makes of the old evidence is just a brief mention to the two minor ways in which Carl's testimony differed from that of Elizabeth Sanchez's. But what the court doesn't do is look at how this new confession puts the identifications into a new light and really impeaches these identifications that were the sole basis of Kevin's conviction. So first, looking at this confession of Ronnie Bolden, who was the only eyewitness who actually knew the identical twins in any capacity before the shooting, Ronnie Bolden's identification is questionable because he didn't have to distinguish between the two identical twins in the photo array that he was given during his pre-trial identification. Yes, go ahead. Sorry. I was just going to say that that's important because we also know that Ronnie Bolden said that he recognized the shooter because of a braided beard. And because we now know that Carl confessed to this crime and we know that Carl had a braided beard around the time of the shooting, and we have no evidence that Kevin had this braided beard. If he had been given a photo array that featured both of the twins, he would have identified Carl, not Kevin, because Carl had the salient feature. That was my question. Was there any evidence that he was ever shown a photo of Carl? Pre-trial, no, he wasn't. He did identify Carl at trial when shown a photo of both of the twins, but he was never shown a photo of Carl pre-trial. And so when we now have this new confession and that puts these identifications in a different light, and it really cast doubt on the reliability of Ronnie Bolden in that, you know, it cast doubt on the fact that he identified the correct identical twin here. And again, we have no evidence in the record that Kevin ever had a braided beard. He doesn't have a braided beard in the photo array. He doesn't have a braided beard in the lineup photos, and he doesn't have a braided beard in any of the photos that were admitted of him at trial. But we do have this photo of Carl from less than two months before the shooting, a state ID that shows him with a similar braided beard to what Ronnie Bolden described. And so that is the type of engagement with the old evidence that the post-conviction court should have done here under Coleman, but didn't do. Now, in addition to... If I recall correctly, Mr. Bolden suggested that it was because of this braided beard that he was so sure that it was Kevin. Is that accurate? Yes, Your Honor. He was very adamant at trial that this was the one salient detail that he remembers about the shooter that night. And another thing that came out of the evidentiary hearing here is that the detective, prior to showing Ronnie Bolden the photo array that, again, only featured Kevin and not Carl, said that he thought he had the suspect identified. So now we know that Ronnie Bolden not only wasn't able to prove that he could differentiate between the twins, but he also was subject to a suggestive identification procedure. We also know that Ronnie Bolden never gave a name or a nickname to the police before the suggestive ID. He never said, I knew this person as twin or used Kevin's name. It's only after he was subject to the suggestive procedure that he said, oh, yeah, that's twin. And again, Kevin and Carl both went by the nickname twin. So that's not exactly probative here when we're deciding whether Ronnie Bolden was reliably identifying one identical twin over the other. Beyond Ronnie Bolden, the only other person who ever identified as a twin. But we also have reason to doubt her identification. First, she didn't know the identical twins before the shooting. So it's unlikely that she would have with any certainty been able to accurately identify that Kevin was in fact the shooter and not Carl when she didn't know them beforehand. But we also know that she was pressured by Ronnie Bolden to identify Kevin in the lineup procedure. In addition to being pressured by Ronnie Bolden, she was also at the precinct for upwards of 15 hours at 16 years old without a parent or guardian with her. And she actually testified that she only identified Kevin because she wanted to leave. And so we take all of that we take these two eyewitnesses identifications that were the only evidence at trial supporting Kevin's conviction. And now we have this new confession by Kevin's identical twin brother Carl. And that puts these identifications in a new light, it impeaches them, and it casts doubt on them. And that is the kind of balancing that the post conviction judge here should have done. And if he had done that he would have come to the correct conclusion that this new confession is conclusive enough to probably change the result at trial, given that the confession was in many respects reliable in many respects lined up with the trial evidence, and also given that the, the evidence at trial was very circumstantial and was based on impeached eyewitness testimony. But beyond this weighing the judge also made erroneous credibility determinations, as I touched on previously. What about the fact that at the point that this confession was made Carl had very little to lose since it looked like he was going to spend the rest of his life in jail. In any. Yes, Your Honor. So this is something that the post conviction judge put a lot of weight on was this idea that I think he said Kevin, or excuse me Carl had nothing to lose. But that's not the case. So what came out of the evidentiary hearing is that Carl did have a pending post conviction petition at the time. And while you and I may understand that getting relief on a post conviction petition is like finding a needle in a So when we're evaluating what what what there was to lose here we have to think about what Carl thought he had to lose and Carl thought he had a lot to lose here, Carl thought he had his, his chance at freedom to lose. So he certainly didn't have nothing to lose, which is what the post conviction judge said. But furthermore, Carl also gave compelling reasons why he didn't come forward initially, and why he chose to come forward at the time he did. So he didn't come forward initially because, frankly, he didn't want to get caught. He didn't want to fess up and he didn't want to expose himself to criminal liability. It was selfish. Wait a minute, wait one second, Miss Ross. Carl was incarcerated for his own charges. Since 2008. Correct. Yes. Okay. So, you're saying, notwithstanding the fact that he'd been incarcerated on his own lengthily sentence since 2008, he was afraid to come forth at that time, is he would have further further problems on his own cases. Say what you're saying. Yes, Your Honor, I'm saying that Kevin, or excuse me Carl had a post conviction petition on that charge, those charges that he's currently incarcerated for current pending at the time that he came forward to confess. And so to him, although his appeal had been finalized he still had this, this other chance at potentially getting out or getting a reduction in what was the length of his sentence at that time. It was a de facto life sentence. It was a long sentence so yes, that is that you're saying he's still feared that heavier charges could possibly hit him in the future. No, Your Honor, let me make sure I'm doesn't sound logical. No, that's not logical. Certainly. So, sorry, I'm trying to say that the reason he didn't initially confess when the shooting happened like back in 2003 is because he was fearful of getting caught. And so this charge that he is currently incarcerated for from 2008 happened, obviously after the shooting. And the reason that he had something to lose coming forward in 2013 when he did was because he was still fighting that conviction that 2008 conviction in court so he still thought he had his freedom to lose, because he had a pending post conviction. I apologize there's a lot of timelines going on here. But just quickly to go back to these compelling points that these compelling reasons that Carl gave at the evidentiary hearing, not only for not coming forward in the first place but for why he came forward when he did. It's because he recently, while he was in prison went through religious counseling and an Alcoholics Anonymous program, both of which emphasize atonement and seeking forgiveness for those from those you've wronged. And so that was Carl's reason for coming forward. 13 years after the shooting and coming forward when he did. And so my point my greater point here is just to emphasize that the post conviction judge didn't take those reasons into account when when deciding whether or not Carl's confession should be given any weight. The judge unduly focused only on the few negative equities that disfavor Carl's confession being credible here. But furthermore, the judge did not focus on the ways in which Carl's testimony was extremely detailed and lined up with the most salient features of the trial evidence. He gave a detailed account that only someone intimately familiar with this crime would have known. Miss Ross. How do you reconcile the fact that Carl's account of switching guns does not is not consistent with the other witnesses who said there was only one gun used and further that Curiel denied driving Carl to the scene. Whereas Carl stated that Curiel drove him to the scene. Yes, Your Honor, I'll take both of those in turn so first on the ballistic evidence. It's true Kevin said, or excuse me, the K names. Carl said that he also had a 32 in addition to the 38, and there's no evidence that there's no shell casings from a 32 at the trial testimony. So there is some parts of the ballistics that are consistent with the trial evidence, but furthermore this court has never held that that a confession needs to align in every particular with the trial evidence or with the other evidence in order to move on moving to the Gabriel Curiel point. It is true that Gabriel Curiel denied being with Carl that day. But the judge didn't consider that Gabriel Curiel had his own motivations to lie at this hearing. First, he would have implicated himself in a murder by admitting to driving Carl to the scene. And that was never grappled with. And furthermore, Gabriel Curiel actually lied in this very evidentiary hearing when he when asked if he had ever been convicted of a felony he said no. The state later had to stipulate that in fact he had been convicted of drug crime and served a year in in prison for that conviction. I see my 15 minutes is up, may I briefly conclude. Any more questions. Are there any additional questions before she does know go ahead. So I just going to say for the foregoing reasons we respectfully request that the court reverse the lower court and grant Kevin a new trial. Thank you. Thank you. Mr Walters. Please the court, the circuit court properly ruled in this case, based on a consideration of all the evidence at the evidentiary hearing in the trial. This was clearly a case that deserved to go to a third stage evidentiary hearing where where Carl Smith's claims could be fully vetted and subjected to sunlight. And that's exactly what happened in this case, and a review. The state actually asked for the evidentiary hearing isn't that right. Yes, we did. We did. We absolutely agree that this is this claim deserve to be fully vetted. And it was claims, Carl Smith's claims end up being self contradictory and impeached in an unbelievable myriad of ways, not just ballistics but but a whole, a whole myriad of ways. With respect, I just want to clarify something I filed my brief on June 2, and the Illinois Supreme Court issued an opinion in a case called people versus Robinson, approximately three weeks later, and they made clear that they did not like the total exoneration total vindication language. So I'm not relying on that language at all. It's not part of this, this decision. And I just want to make it clear that under the standard, which is whether defendant has presented evidence that is a such a conclusive nature that it would probably change the result on retrial defendant has absolutely failed to meet that burden, and in the circuit courts ruling below was a not against the manifest way to the evidence of looking at at the evidence that defendant presented in the light of the evidence that was presented Again, I said that that Carl Smith's testimony is his version of events is is is impeached in myriad ways and I went through many of those in my brief, I just want to add both Northwestern and I had the chance to look over some of the exhibits, and they should have been submitted as, as, as far as we understand they've been submitted as, as part of the record now before your honors that included exhibits that were presented at the evidentiary hearing, and in Carl Smith's Walters may I interrupt you one moment I'd like to get to a salient point, Miss Ross put a lot of weight on the fact that photographs showed a twin or the defendant here with a braided beard, but and based upon the facts concerning those photos. The court should have given a new trial. What's what's your comment to her remarks in that respect. Your Honor, I, I examined that that claim made in the defense reply brief I looked through it thoroughly that that defense claim is based on a photograph of defendant that was taken at the time of the arrest. The arrest happened in April 20 something of 2003, April 25 2627 somewhere somewhere in that neighborhood. The shooting took place in March, 22 2003 that photograph that they're pinning everything on was some 30 days or more. After the shooting in this case that gave defendant ample time to a get rid of the gun, which he did, and he changed his appearance. And we know that defendant in his brother Carl Smith have been spending a lot of time posing is one another. And I'm sorry for a second, it also it rests primarily on the photograph of Carl that has a braided beard in it that was presented at the evidentiary hearing. Correct. You are also familiar with that photograph that's the photograph that they're relying on the library, I think. Correct. Yes, Your Honor. Absolutely. And it goes exactly to the point I make that Carl Smith has spent a lot of time pretending to be his brother, and this is just one more example of them trying to work the system where one is posing as the other. I'm going to stop you. The Carl Smith photograph is back from 2003 so he can't have known at that point that it was significant whether or not he had a beard with a braid in it. Correct. There. That was before the trial before anybody could have testified to that it was long before any of that. Correct. So nobody knew that Mr. Bolden was going to say that I know it was the guy who had the braid in his beard. Nobody knew that at the time that photograph was taken. Correct. That may well be the case it doesn't change the fact that defendant had ample opportunity to change his appearance. Right, but nobody knew. I understand he could have shaved his beard, but nobody knew what Bolden was going to testify to at that time. Correct. This was all, all these photographs were long before Bolden said, I know it was the guy who had the braid in his beard. Correct. Is that correct or not? If I'm wrong, tell me. As far as I'm as far as I understand it is correct it doesn't change my analysis of the situation which is that he spent an awful lot of time pretending to be his brother, and he knew what his brother looked like, and he knew when it suited him to change his appearance after having committed a heinous murder in broad, well in broad nightlight on North Sheridan Road, which is a pretty pretty brightly lit area in front of a nurse in front of traffic, by the way, this the shooting happened in front of a nurse, seven or eight feet in front of her. So, this was a pretty brazen thing to do it was it was done in very bright light. There's no, there's no contradiction to that fact at all. So, okay, with respect to, with respect to the trial evidence, another panel has reviewed this evidence and found it not closely balanced and that is absolutely a correct assessment of the evidence in this case. You have somebody who knew both Carl Smith and defendant years had had lived in the same building with defendant for a month saw him every day for a month. Demonstrate an ability to pick the two apart. Sorry. I'm sorry, let me ask about that because he says he's lived in the same building for him with him for a month in 2002, I believe, but that was, that was when Kevin was in jail. So I'm confused about that testimony. Did they live in the same building in jail, what do you understand that testimony what. Yes, Your Honor, to my understanding they were both in prison in the same place, and they both have the same building he's saying we live in the same building in jail. As far as I understand the truth. Yes. As far as I understand the record. Yes. You know, I want to get to another question that you asked of my opponent. And that was with respect to whether Ronnie Bolden had seen photographs of Carl Smith, before he made an identification of defendant in this case, and it turns out that his trial testimony he said that he did, he was shown a number of photographs he says by the police, including a photograph of defendant if you if you review, Ronnie Bolden trial testimony you will see that didn't he did view, and this is corroborated detective investigation in this case, Ronnie Bolden wasn't the first person to come in. Actually Melvin Hughes was the first person to come in and Melvin Hughes was also shown photographs of defendant and Carl Smith, and could also differentiate between defendant Carl Smith as could Gabriel Curiel number of people who know defendant and Carl Smith are able to distinguish them. So, this is, did any detective corroborate Mr Bolden's testimony that he was shown pictures of both of them. I looked through detective Bolden's trial testimony. I don't see that he was active Bolden as well as a Mr Bolden, I'm sorry. I may be butchering his name I think it's Vulcan Shelley, it's BLC it's it's hard. So can I just say detective be. I don't want to, I don't want to butcher his name just so you're right it's it's I don't want to get detective Bolden that Ronnie Bolden is the victim witness in this case, detective be for for. It could be back and Shelley I don't know. Detective be for for our purposes. I looked through his, I looked through his testimony he wasn't directly asked anything about, about that other I, I do agree that there was an array shown in this case that only had defendants picture in it. I think that when detective be was questioned about this point. He, he, he evidence some trepidation about putting defendant and Carl Smith in the same lineup. And I want to point out that that if I were the defense attorney in such a case, I would point out that that's highly suggestive that that that takes away all the other participants in a lineup or an array, and it kind of has the effect of drawing an arrow at one of those two individuals. So, it could be, it could be well argued that that such a situation could be highly suggestive. And so, in a, in a situation where you have a witness who knows both of these individuals who has demonstrated that he can differentiate between both of these individuals and in fact that is a fact that it's fully corroborated at the evidentiary, not only Gabriel Curiel corroborates this differentiation he's able to, you know, this little defense trick at trial where the where the defense attorney, and I don't blame the defense attorney what else could he do Carl Smith wouldn't cooperate right Carl Smith wouldn't cooperate for 10 years. Um, he had to do something to put this notion before the jury that there was a, there was a twin brother out there. So he, he puts these photographs a series of photographs in front of Ronnie Bolden the trial on cross examination what does Ronnie Bolden do both times he correctly is able to distinguish defendant from Carl Smith, that same photograph is shown to Gabriel Curiel at the evidentiary hearing. Same thing he's able to differentiate the two defending himself, he's shown the same photograph, he's able to distinguish the two, you know, the only person who wasn't able to the same person who I wanted to get to a series of of lies that he's told is Carl Smith, he's the only person who can't somehow pick himself out in a photograph, which is, which is really telling. I think another a lot of tells in this case, one of the other great tells in this case. I mentioned before that Carl Smith and defendants spent a lot of time trying to trying to pretend to be the other person, especially put one over on law enforcement. Now, defendant was in violation of parole. Now this feeds into a series of false alibis that he gave, but he was in violation of parole he was in out of state, and his brother was posing as him, except when this is this is really an important tell. He poses his brother, except when there's going to be an in person meeting with the parole officer, why, why didn't he, why did he make his brother come back from Pennsylvania to meet in person with a parole officer, because defendant and Carl Smith can be differentiated they weigh 30 pounds or 30 pound difference. You know when Carl Smith went into the testify, he testified, didn't he that he didn't want his brother to go to that meeting because he didn't think his brother would test clean for drugs and he needed to test clean for drugs. That was why he said he would came back for the meeting. Wasn't that his testimony. It may well have been in your honor Carl Smith said a lot of things that just flat out aren't true. I'm saying just kept Kevin Dugar testified to that, because he was the one who came back for the meeting. Kevin Dugar also testified to a lot of things that are self contradictory and untrue. If you go through the series of different alibis he gave as one alibi crumbled he came up with another one. Alibis those three alibis, or we're all given while he's at the police station initially for questioning is that right. Depends on how you come up these alibis, I mean what what do you say about the letter that he sent through his brother, trying to trying to gather alibis from people like Gabriel Curiel, I mean that I don't think that was at the police station. So, there's a lot of attempts here to try and and put together a false alibi. A lot of attempts there's coaching of a witness over the phone at police station. It really doesn't add up for defendant. This is a really underwhelming case of actual innocence. But the tell I just I just want yeah that that whole tell business about about the 30 pound weight difference and how these two can be distinguished and how Carl Smith didn't want to get caught by the parole officer trying to trying to be his brother in when you know in an in person meeting with with a parole officer and and defendant has been in the Illinois Department of Corrections, the pro officers new defendant. This was not going to be a successful attempt to put one over, so they didn't do it there. I said that Carl Smith tells a lot of lies. If you look at petitioners two and three, these are in in petitioners, I'm sorry, this year's two and three are Carl Smith's letters, they're written in his own words, he wasn't in a police station, no one was no one was coercing him. He had the opportunity to write exactly what he wanted to write. So in one of them, he says he was on Sheridan Road that night, going to McDonald's, and another one he says he's going to meet his weed man. Okay. And the problem with both of those besides that they contradict each other is he admits that he's a he's a gang drug dealer. And we know that this this patch of of North Sheridan Road is either disputed gang turf, or it's it's turf that's being controlled by a rival gang, the Blackstones. So, the defendant who's a drug dealer is looking for marijuana, which is probably the most widely available controlled substance in disputed territory when when he's a member of an opposing gang. The whole thing, even a house of cards has some structure to it. This is just a series of lies. Johnny Two Guns, you know, his, his statement is not back to five ballistics. Whereas the complaining witnesses testimony in this case is corroborated, it's fully corroborated, corroborated trial. It's corroborated at the evidentiary. Unlike Carl Smith, the nurse, the independent witness completely contradicts the the details. You know, Carl Smith, they say, gets a few of the larger details right, he knows the geographic area that this took place 10 years later, he knows the geographic area, he knows who was shot, he knows that a shooting went down, that's all great. You know what he didn't know? Any of the details. He has himself running across the street after the shooting. That's not what happened. Every one of the witnesses saw him, including the nurse, saw him run south through the park on the east side of Sheridan Road there. So, he gets that wrong. He gets that there were two guns, the type of guns. He knows, fine, he knows that a .380 was used, but he has himself shooting two guns. He has the one gun full of 17 rounds, but then he says, oh, I shot seven rounds. I shot it, I emptied it, but there was only seven rounds. Well, if you look at any one of his statements over and over again, or you could start comparing his statements to other statements he makes, this is terrible. This is an underwhelming case of actual innocence. So, the long and short, the people respectfully request that this court affirm the circuit court's ruling below, which was absolutely based on the truth, absolutely based on the record, which compared the evidence at trial, specifically, there's not only two mentions in the court's ruling, by the way, to the record, there's a specific mention to the nurse's testimony. And comparing the nurse's testimony, which is true and independent, to Carl Smith's not believable testimony. So, that was a specific finding that the circuit court made. So, it is absolutely not true and not the case to say to this court that somehow the circuit court didn't weigh the evidence that was presented at trial in comparison to the new evidence of actual innocence. It is, again, the people respectfully request that this court affirm the circuit court's ruling below. Any questions for Mr. Walters? He sounds like he's about to say that you're done. Are you done, unless we have questions? Absolutely, Your Honor. Okay. No questions. All right. Thank you. Ms. Ross? May I proceed? Yes. As the state mentioned during their presentation, the standards cited in the state's briefs is wrong. As the Supreme Court laid out in People v. Robinson just a few months ago, the standard here isn't whether the new confession would completely exonerate Kevin on retrial. The question is merely, is there enough here to reexamine this evidence? Is it probably true that this confession would change the result? And so, that's the correct standard here, as the state points out, not the standard in their brief. Just a few points I want to raise based on the state's presentation. First is this braided beard point. And I just want to clarify the facts surrounding the braided beard. The braided beard, the picture of Carl with the braided beard was from a little shy of two months before the shooting. And so, any contention that this was an attempt by Carl to pose as Kevin or to try to confuse people can't have been true because this photo is from before there was ever a shooting. So, we couldn't have anticipated that Ronnie Bolden was going to blurt out at trial that he remembers there being a braided beard. So, this can't have been any kind of attempted ruse by Kevin and Carl to kind of trade places for each other. Which, it is true, they did do that and they said in the testimony that they grew up and they would trade places with each other and that Kevin would sometimes call in for, Carl would call in for Kevin's parole calls to pose as him. But this is very different than taking the fall for murder. And so, that is not a reason to completely discredit Carl's testimony here. And we also want to point out that, you know, the state says that there's so many lies that Carl said or that there are so many points that his testimony is incorrect. But he really got the most salient points correct. So, in addition to the gun jamming point, which I brought up in my argument in chief, he also got the black Lexus point correct, which is corroborated by both Gabriel Curiel and Ronnie Bolden. And he got the make and color of the victim's car that they were driving that night correct, which was a maroon SUV. And so, yes, there are some points that don't line up exactly, but again, this is recalling a shooting from 13 years ago. And we explained these discrepancies more in depth in our brief, but just to reiterate the standard is not that the confession needs to line up with every piece of trial evidence in order to be credible or in order to even support a conviction. And as I said, clearly, Carl's confession here lined up enough that it would certainly support a conviction were he the one on trial for this crime. And I briefly just want to point out this, this point that the state makes about Kevin having so many different alibis or having these conflicting stories. But we know that once Kevin first learned of the exact date of the shooting, his story hasn't changed since. He was in Chicago, and later that evening around 4pm, he was at parties at his family's home. That hasn't changed since he learned the date of the shooting. He was initially confused because he was in Pennsylvania, the week before the shooting, and he wasn't told when he was first arrested that he was being investigated for murder, let alone the date of the murder. Once he knew that information, this account hasn't changed. And so that's not true here. But in any event, Kevin's credibility was not what is at issue here. What's at issue is Carl's credibility and the credibility of this confession. Kevin's alibi and Kevin's account is not new evidence that's being weighed by the post-conviction court here. At bottom, what we have here is a new confession by Kevin's identical twin brother. And the question is, is this confession enough to more carefully scrutinize the trial evidence and to allow a jury to have this, this evidence of a confession by an identical twin to re-examine the determination of guilt or innocence here? And it's clear when we weigh the old and the new evidence together that this knowledge of a confession by an identical twin is certainly enough to meet the Coleman standard of probably changing the result at retrial. Again, we don't have to prove that it would certainly exonerate Kevin. We just have to show that it probably would. And we think we've done that today. But again, the only person who has ever confessed to this crime is Carl. Carl is the twin who was actively involved in gang life at the time of the shooting. Carl is the twin who has a violent disposition as evidenced by his heinous crimes against Gabriel Curiel and his five-year-old son. And Carl is the man who had a braided beard around the time of the shooting. Kevin, on the other hand, had denounced gang life at the time of the shooting. He actually did everything in his power to try to escape the grasp of gang life by trying to relocate to Pennsylvania because he was fearful that he would be mistaken for his identical twin brother in the eyes of a rival gang member. Ultimately, his fear did come true. He was confused for his identical twin brother, and that confusion has resulted in him being incarcerated for the past 15 years. And again, Kevin has continuously professed his innocence from the moment he was first picked up for this crime through the lineup where he mouthed, please don't pick me, I didn't do it, to his sentencing, and to today. And for the foregoing reasons, we ask that this court reverse the trial court and grant Kevin a new trial. Thank you both. I think that the panel joins me in noting that Ms. Ross did an outstanding job. No question. Outstanding, Ms. Ross. Outstanding. Thank you. And we will take this matter under advisement.